359 A.2d 793

**Richard C. STEVWING and Mary Ann Stevwing, Appellants,**

v.

**WESTERN PENNSYLVANIA NATIONAL BANK.**

Supreme Court of Pennsylvania.

Argued Oct. 9, 1974.

Decided July 6, 1976.

26

---

Peter D. Jacobson, R. Stanton Wettick, Jr., Neighborhood Legal Services, Pittsburgh, for appellants.

Robert G. Sable, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## ORDER

PER CURIAM:

The Court being equally divided, the Decree of the trial court is affirmed.

POMEROY, J., filed an opinion in support of Affirmance in which EAGEN and O'BRIEN, JJ., joined.

JONES, C. J., dissented.

ROBERTS, J., filed an opinion in support of Reversal.

MANDERINO, J., filed an opinion in support of Reversal.

NIX, J., did not participate in the consideration or decision of this case.

## OPINION IN SUPPORT OF ORDER OF AFFIRMANCE

POMEROY, Justice.

This is an appeal from a decree of the court of common pleas which dismissed appellants' complaint in equity against the appellee bank, Western Pennsylvania National Bank ("WPNB").[1] By their suit, appellants sought to rescind a home improvement installment contract which they had entered into on March 19, 1971 with Plastico Industries, Inc. ("Plastico") and which Plastico had assigned to WPNB. The complaint alleged that pursuant to the contract Plastico had sprayed the roof of the Stevwings' residence with a plastic coating material guaranteed by Plastico to prevent water leakage for a period of fifteen years; that following the application of the coating, the roof leaked at the first rainfall and continued to leak despite repeated efforts by Plastico to cure the defects in the roof's coating. Rescission was sought on theories of fraud, misrepresentation, breach of contract and failure of consideration.

The evidence at trial established that following the first spraying of the roof the Stevwings signed a certifi-

[1]. The appeal was taken pursuant to Section 211.202(4) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(4), 17 P.S. § 211.202(4) (Supp.1975–76), providing for direct appeals to this Court from final decrees in the courts of common pleas in proceedings in equity. That section has since been suspended by Supreme Court Rule 73, effective April 7, 1975, transferring jurisdiction of such appeals to the Superior Court.

cate of completion, acknowledging that the work had been completed to their satisfaction. The certificate was then transmitted by Plastico to WPNB, which thereupon purchased from Plastico its contract with the Stevwings.[2] Pursuant to Section 208 of the Pennsylvania Home Improvement Finance Act, Act of August 14, 1963, P.L. 1082, art. II, § 208, 73 P.S. § 500–208, a notice of the assignment was sent by WPNB to the appellants. The efficacy of this notice of assignment is the focal point of our inquiry on this appeal.

Section 208 of Home Improvement Finance Act provides as follows:

> "*No right of action or defense arising out of the transaction* which gave rise to the home improvement installment contract which the buyer has against the contractor, and which would be cut off by assignment, *shall be cut off by assignment of the contract to any third person* whether or not he acquired the contract in good faith and for value *unless the assignee gives notice of the assignment to the buyer as provided in this section and within fifteen days of the mailing of such notice receives no written notice of the facts giving rise to the claim or defense of the buyer.* A notice of assignment shall be in writing addressed to the Buyer at his address shown on the contract and shall indicate or contain: The name and address of the assignee, the names of the contractor and the buyer and a description of the goods and services which are the subject matter of the contract, the time balance of the contract, the number and amount of installments in which the time balance is payable and the due date or period thereof, together with the following legend

2. The contract was entitled "Pennsylvania Home Improvement Installment Contract And Note." The contract contained a promise on the part of the buyer (the Stevwings in the present case) to pay a certain sum in specified monthly installments over a period of 36 months. This promise to pay apparently constituted the note which, automatically, was also transferred to the bank.

printed or written in a size equal to at least eight point bold type:

Notice:

1. If the within statement of your transaction with the contractor is not correct in every respect; or

2. If the goods and services described in or in an enclosure with this notice have not been delivered and satisfactorily performed by the contractor; or

3. *If the contractor has not fully performed all his agreements with you, you must notify the assignee in writing* at the address indicated in or in an enclosure with this notice *within fifteen days from the date of the mailing of this notice; otherwise, you will have no right to assert against the assignee any right of action or defense arising out of the sale which you might otherwise have against the contractor.*" (emphasis added).

Appellants make no claim that they notified the assignee bank within fifteen days of the mailing of the notice of any claims or defenses which they might have had arising out of the roof repair contract.[3] Instead, they now assert that the notice of assignment was sent to them by the bank in a form which did not comply with the requirements of section 208. The record, however, gives no indication that this issue was raised below. As we have repeatedly held, "issues not raised or passed upon in the court of original jurisdiction should not be consid-

**3.** In the lower court the Stevwings contended that they had never received any notice from the bank of the assignment. This claim is not stressed on appeal, and in any event would not prevail. Relying upon the testimony of a bank officer, the chancellor, affirmed by the court en banc, found that the notice had indeed been sent by WPNB on April 2, 1971. Because the record reveals adequate evidence to support this finding, it has the "force and effect of a jury's verdict and will not be disturbed on appeal." *Snow v. Corsica Construction Co.,* 459 Pa. 528, 329 A.2d 887, 889 (1974). See also *Schiff v. Upper Salford Township,* 456 Pa. 420, 321 A.2d 876 (1974); *Anthony v. Perose,* 455 Pa. 233, 312 A.2d 360 (1973); *Yuhas v. Schmidt,* 434 Pa. 447, 258 A.2d 616 (1969).

ered on appeal." *Chwatek v. Parks*, 450 Pa. 62, 67, 299 A.2d 631, 633 (1972). See also *Trans-Fuel, Inc. v. Saylor*, 440 Pa. 51, 269 A.2d 718 (1970); *Crown Construction Co. v. Newfoundland American Ins. Co.*, 429 Pa. 119, 239 A.2d 452 (1968). Cf. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).[4]

We turn directly, then, to a determination of the effect of the giving by the bank to appellants of a notice of assignment in compliance with Section 208 of the Act. The note held by WPNB, incorporated as it was within the installment contract itself, was obviously non-negotiable, and at trial the parties stipulated that WPNB was not a holder in due course. In light of the fact that the note was not separately negotiable, this stipulation was unnecessary.[5]

One who is a holder in due course takes an instrument free of all personal defenses which the obligor might have. *See* Uniform Commercial Code, §§ 3–302, 3–305, 12A P.S. §§ 3–302, 3–305; Murray, Contracts, § 308 at 630–31 (1974). *But see* Federal Trade Commission Regulations on Holders in Due Course, 44 U.S.L.W. 2240, limiting the applicability of that doctrine in the context of consumer sales effective May 14, 1976. In contrast, under ordinary principles of contract law, the assignee of a non-negotiable instrument such as that involved herein takes subject to all defenses, set-offs and counterclaims that the obligor might assert against the

4. This point not having been previously raised, we perceive no need to discuss it, notwithstanding that it forms the basis of Mr. Justice Manderino's opinion in support of reversal.

5. Even had the note been negotiable, WPNB could not have become a holder in due course under the Home Improvement Finance Act. That Act, in Section 207, abolishes that status as to transactions within its ambit. Section 207 provides:
    "No home improvement installment contract shall require or entail the execution of any note or series of notes by the buyer which, when separately negotiated, will cut off as to third parties any right of action or defense which the buyer may have against the contractor." 73 P.S. § 500–207(a).

assignor. Murray, supra, § 307 at 626. Holder in due course status, however, is not a prerequisite to insulating the bank from an attack on the validity of the underlying contract once Section 208 of the Act has been complied with. Such compliance confers upon the assignee a status akin to that of a holder in due course unless the assignee is notified by the buyer within the fifteen day statutory period of any claims or defenses. The language required by Section 208 to be part of the notice which must be given the buyer admits of no other interpretation:

> "If the contractor has not fully performed all his agreements with you, you must notify the assignee in writing at the address indicated in or in an enclosure with this notice within fifteen days from the date of the mailing of this notice; *otherwise, you will have no right to assert against the assignee any right of action or defense arising out of the sale which you might otherwise have against the contractor.*" (emphasis added).

In the present case, the bases for appellants' action for rescission—fraud, misrepresentation, breach of contract and failure of consideration—all arose out of the transaction between the buyer and the contractor and are of the type that may be cut off under Section 208. Since it is uncontested that no notice was given by the Stevwings to WPNB within the statutory period, they are precluded from asserting those claims against the bank. By the same token, the Stevwings may not eradicate the bank's right by a rescission of the contract and note.

Our decision is in accord with the views expressed by two lower courts in this Commonwealth: *General Electric Corp. v. Borosh,* 50 Pa.D. & C.2d 377 (1970); *Brookline Savings & Trust Co. v. Bubin,* 116 P.L.J. 321 (1967). At least one other jurisdiction, New York, has a notice provision similar to Section 208 which has been interpreted consistently with our construction of the

Pennsylvania statute: Personal Property Law, § 403 (McKinney, Supp.1975–76); *Cappa v. Steve Aloi-Ford,* 51 Misc.2d 161, 272 N.Y.S.2d 874 (1966). *See also* Comment, Legislative Solution to a Judicial Dilemma: The Pennsylvania Home Improvement Finance Act, 10 Vill. L.Rev. 309 (1965).[6]

We would affirm the decree.[7]

EAGEN and O'BRIEN, JJ., join in this opinion.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

I agree with Mr. Justice Manderino that appellants did not waive the issue of appellee's compliance with section 208 of the Home Improvement Finance Act. Act of August 14, 1963, P.L. 1082, art. II, § 208, 73 P.S. § 500–208 (1971). I also agree that the notice of assignment sent by appellee to appellants did not satisfy the requirements of that statute. The trial court's decree should therefore be vacated and the case remanded for further proceedings.

However, I do not believe that section 409 necessarily precludes the bank from raising any defense of estoppel. It urges that it relied on the certificate when taking the

6. *See and compare* Section 15F of the Motor Vehicle Sales Financing Act, Act of June 28, 1947, P.L. 1110, as amended, 69 P.S. § 615F; *Commonwealth Bank and Trust Co. v. Keech,* 201 Pa. Super. 285, 192 A.2d 133 (1963); *First National Bank of Millville v. Horwatt,* 192 Pa.Super. 581, 162 A.2d 60 (1960).

7. In light of our disposition of this case, we need not consider appellants' further argument that the trial court erred in concluding that by the signing the certificate of completion appellants were estopped from asserting any claims or defenses they might otherwise have had against the appellee. Nor need we consider whether an estoppel is possible in light of section 409 of the act, which provides: "No act, agreement or statement of any buyer under a home improvement installment contract shall constitute a valid waiver of any provision of this act intended for the benefit or protection of the buyer." Act of August 14, 1963, P.L. 1082, art. IV, § 409, 73 P.S. § 500–409.

assignment of the note and that the appellants are therefore estopped from asserting any defenses against the note. Because the appellee failed to comply with section 208, the certificate of completion cannot itself give rise to estoppel as a consequence of the assignment.[*] However, the assignee now stands in the position of the assignor with respect to the appellants. Appellants may assert any defense to the note they might have, and the assignee may assert any waiver or release of those defenses which the assignor might have claimed.

## OPINION IN SUPPORT OF REVERSAL

MANDERINO, Justice.

The opinion in support of affirmance has completely missed the point of Section 208 of the Home Improvement Finance Act. That section requires that a *warning notice* be given informing consumers that they have a fifteen day period in which to discover defects in a seller's product or service. The purpose of Section 208 is not only to give notice of the assignment (which is for the benefit of the assignee) but also to give a *warning notice* (which is for the benefit of the consumer) that one must report defects to the assignee within the fifteen day period or be barred from ever asserting claims or defenses against the assignee. No such notice was ever given by the assignee to the consumers in this case.

When the law requires that notice be given, the method used must always be one reasonably calculated to come to the attention of the person whom the law was designed to protect. If such method is not used, it cannot be concluded that notice was given. This requirement was not met in this case. Here, the original con-

---

[*] Moreover, it appears that appellants' claim is based on a hidden defect, which, if true, would preclude a defense of estoppel.

tract between the consumer and the roofing contractor had been executed on a form entitled "Pennsylvania Home Improvement Installation Contract and Note" consisting of seven copies each separated by a sheet of carbon paper: two in yellow labeled "Bank Copy", one in pink labeled "Seller's Copy", and four in blue labeled "Buyer's Copy". The seven copies were identical in every respect except that one of the two "Bank Copies" contained the notice of assignment and the warning notice on the reverse side. That copy was sent to appellants with no cover letter or other indication that it contained anything not contained in the "Buyer's Copy" which appellants had already been given at the time they signed the contract. Upon receipt of such a document, even the most cautious buyer could reasonably assume it to be an exact copy of the original contract and never examine it further, or even turn it over to see what might be on the other side. To consider the mailing of that copy of the installment contract as the giving of the *warning notice* legally required is contrary to the purpose of Section 208—to *actually* put the consumer on notice that one must act within fifteen days. Here, the "paper" sent to appellants by appellee might just as well have been printed in ink designed to become invisible before appellants ever received the mailing.

Contrary to the assertion of the opinion in support of affirmance, the issue of appellee's compliance with Section 208 was raised in the court below. One of the exceptions filed by the appellants in the trial court read as follows:

"Plaintiffs except to the failure of the Court to find that Defendant did not send Plaintiffs notice of the assignment of the contract as required by section 208 of the Pennsylvania Home Improvement Finance Act."

The appellee contends that this issue cannot be decided by this Court because we would be required to make findings of fact. I cannot agree with the appellee's posi-

tion. No findings of fact are required. The only issue involves a legal determination as to whether the piece of paper which the trial court found had been sent to the appellants complied with statutory requirements of Section 208. The opinion in support of affirmance confuses appellants' receipt of a piece of paper with receipt of the statutorily mandated notice of the fifteen day period.

Appellee argues that the signing of the certificate of completion estopped appellants from asserting against appellee any defenses that they might have against the contractor because of appellee's reliance on the certificate of completion when releasing funds to Plastico Industries, Inc. Generally, the assignee of a non-negotiable note takes it subject to all the defenses to which the assignor was subject, unless the debtor has estopped himself from asserting the defense. *See United States National Bank in Johnstown v. Drabish,* 187 Pa.Super. 169, 144 A.2d 640 (1958); *Standard Furnace Company v. Roth,* 102 Pa.Super. 341, 156 A. 600. Under Section 208, however, unless proper notice of assignment (including the fifteen day warning notice) is given to the consumer "(n)o right of action or defense . . . which would be cut off by assignment, shall be cut off by assignment . . . ." Therefore, if the assignee fails to comply with the notice requirement of Section 208, the consumer retains the right to bring any such action or to raise any such defense against the assignee. Section 409 of the Pennsylvania Home Improvement Act prevents the certificate of completion signed by the consumer from operating as an estoppel, assuming it otherwise would constitute an estoppel. Section 409 of the act reads:

"No act, agreement or statement of any buyer under a home improvement installment contract shall constitute a valid waiver of any provision of this act intended for the benefit or protection of the buyer."

To accept appellee's argument would be to ignore the above section which insures that the consumer will not lose the rights specified in Section 208.

The decree of the trial court should be reversed and the matter remanded for further proceedings.

NIX, J., did not participate in the consideration or decision of this case.